UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Frances Webster, on behalf of herself and similarly situated consumers, <br><br> Plaintiff, <br><br> vs. <br><br> Midland Credit Management, Inc., <br><br> Defendant. | Case No.: 1:18-cv-4735-RMB-JS <br><br> Civil Action <br><br> FIRST AMENDED COMPLAINT |

Plaintiff, Frances Webster (hereinafter "Plaintiff") alleges:

### PRELIMINARY STATEMENT

1. This is an action for damages arising from violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

### JURSIDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in this district under 28 U.S.C §1391(b).

### PARTIES

4. Plaintiff is a natural person who at all relevant times has resided in Maple Shade, New Jersey and is a "consumer" as the phrase is defined and applied under 15 U.S.C. §1692(a) of the FDCPA.

5. Defendant Midland Credit Management, Inc. ("Midland") is a business entity that regularly conducts business in New Jersey, with its principal place of business at 2365 Northside Drive, Suite 300, San Diego, California 92108 and is a "debt collector" as the phrase is defined and applied under 15 U.S.C. §1692(a) of the FDCPA in that they regularly attempt to collect on debts primarily incurred for personal, family or household purposes.

## BACKGROUND

6. The FCRA's purpose is to ensure that Furnishers follow proper procedure in ensuring that a consumer's credit report is reporting accurately.

7. Every credit report contains a number of lines representing a placeholder for a specific Furnisher to report about a debt or credit line incurred by a consumer. These lines are known as trade lines.

8. Trade lines have a number of fields which convey a significant amount of information to prospective creditors and which directly affect FICO credit scores.

9. The Date of Status field represents the day a debt is deemed uncollectible and thus charged off. *Toliver v. Experian Info. Solutions, Inc*., 973 F. Supp. 2d 707, 725 (S.D. Tex. 2013). The Date of Status corresponds to a separate Status segment of the trade line. The Status segment reveals various forms of information concerning the trade line. The Date of Status should remain uniform throughout each credit report disclosing the trade line as this date does not change regardless of whether the original creditor sells the debt to a third party.

10. The First Reported date reflects the date in which the debt had its first major delinquency or was first reported to the credit bureaus. *Toliver*, 973 F. Supp. 2d at 723. This date also cannot be changed.

## FACTUAL STATEMENT

2

11. Midland, a debt collector, acquired a number of debts allegedly due and owing another, incurred through the use of various credit cards used primarily for personal, familial and household use.

12. In attempt to collect said debts, Midland placed a number of trade lines on Plaintiff's credit report.

13. One trade line bearing account number 856457****, showed a balance of $808 on a credit report from Experian dated September 19, 2016. On that report, the reported Date of Status and First Reported date was January 2015. On a credit report from Experian dated February 10, 2017, both of those dates were falsely changed to February, 2015.

14. Another trade line bearing account number 856569****, showed a balance of $689 on the September 19, 2016 Experian credit report. The reported Date of Status was September 2015 and the First Reported Date was August 2015. On the February 10, 2017 report, Midland once again illegally changed the date First Reported and Date of Status to October, 2015.

15. A third trade line bearing account number 856575****, showed a balance of $7,570. The September 19, 2016 credit report similarly had a Date of Status of September 2015 and First Reported Date of August 2015. Likewise, on the February 10, 2017 report, the dates were both changed to October, 2015.

16. By changing these dates to appear more recent than they truly are, Plaintiff's credit worthiness is negatively affected because it makes Plaintiff's delinquencies appear more recent than is accurate.

17. Defendant made these changes in response to lawful disputes by Plaintiff within the last two years.

18. Further, Defendant failed to correct these dates after Plaintiff disputed them through counsel in February 2017.

19. Thereafter, Defendant continued to voluntarily report the erroneous dates to the credit reporting agencies.

20. Upon information and belief, whenever consumers invoke their dispute rights, Defendant punishes these consumers by making their delinquencies appear more recently than they truly are.

21. Defendant's placement of false, deceptive, and misleading information on the credit report violates the FDCPA.

22. Defendant's failure to adequately investigate disputes, such that it changes dates in response to consumer disputes violates the FCRA.

## CLASS ACTION ALLEGATIONS

### The Class

23. Plaintiff brings this as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly situated who have received similar injuries from Defendant.

24. The classes are defined as follows:

> **FDCPA Class No. 1: All natural persons residing in New Jersey for whom Defendant has changed the first reported date on consumers' Experian credit reports within one year prior to the filing of this complaint.**
>
> **FDCPA Class No. 2: All natural persons residing in New Jersey who were not making payments on their accounts and for whom Defendant has changed the date of status on consumers' Experian credit reports within one year prior to the filing of this complaint.**
>
> **FCRA Class No. 1: All natural persons residing in New Jersey on whose behalf Defendant received a dispute letter, and subsequently changed the first reported date on said person's Experian credit reports within two year prior to the filing of this complaint.**
>
> **FCRA Class No. 2: All natural persons residing in New Jersey who were not making payments on their accounts and on whose behalf Defendant received a dispute letter, and subsequently changed the date of status on said person's Experian credit reports within two year prior to the filing of this complaint.**

4

25.     Excluded from the Classes is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the defendants, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant.

### Numerosity

26.     Upon information and belief, Defendant has changed the dates on hundreds if not thousands of Experian trade lines. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

27.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### Common Questions of Law and Fact

28.     There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. Common questions of law and fact include whether Midland changed these static dates inappropriately, whether these changes violate the FDCPA and FCRA, and what is the appropriate statutory formula of compensation for victims of said unlawful conduct.

### Typicality

29.     Plaintiff's claims are typical of the claims of the Classes, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Classes.

### Protecting the Interests of the Class Members

30.     Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

## **Proceeding Via Class Action is Superior and Advisable**

31. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.

32. The members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

33. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

34. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiffs' Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35. Depending on the outcome of further investigation and discovery, Plaintiffs may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

36. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

37. Absent a class action, the Class members will continue to suffer losses borne from Midland's breaches of Class members' statutorily protected rights as well as monetary damages, thus allowing and enabling: (a) Midland's conduct to proceed and; (b) allowing Midland to enjoy the benefit of its ill-gotten gains.

38. Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY MIDLAND

39. Plaintiff realleges the above paragraphs as if recited specifically set forth at length herein.

40. At all times pertinent hereto, Midland was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

41. Midland willfully and negligently supplied Experian with information about Plaintiff that was false, misleading, and inaccurate.

42. Midland willfully and negligently failed to conduct an investigation of the inaccurate information that Plaintiff disputed, and continued to report dates that were inaccurate.

43. Midland willfully and negligently failed to report the results of its investigation to the relevant consumer reporting agencies.

44. Midland willfully and negligently failed to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies, concerning the inaccurate information disputed by Plaintiff.

45. Midland willfully and negligently continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to credit reporting agencies.

46. Midland willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

47. Midland's conduct, action and inaction was willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Midland was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, PLAINTIFF PRAYS that this court grant her a judgment against Midland for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and attorney's fees.

## COUNT II
## VIOLATION OF THE FAIR DEBT
## COLLECTION PRACTICES ACT
## BY MIDLAND

48. Plaintiff realleges the above paragraphs as if recited specifically set forth at length herein.

49. Midland has placed erroneous information on key components of Plaintiff's credit report including the date First Reported and the Date of Status in violation of 15 U.S.C. §§ 1692e(8), and e(10).

50. Section 1692e provides:

> **§ 1692e. False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

WHEREFORE, PLAINTIFF PRAYS that this court grant her a judgment against Midland for statutory damages, actual damages, costs, interest, and attorneys' fees.

## JURY TRIAL DEMAND

51. Plaintiff demands a jury trial on all issues so triable.

Dated this 14th day of June, 2018.

                Respectfully Submitted,

                /s/ Nicholas Linker
                Nicholas Linker, Esq.
                Daniel Zemel, Esq.
                Zemel Law LLC
                1373 Broad Street, Suite 203-C
                Clifton, NJ 07013
                Tel: (862) 227-3106
                Email: nl@zemellawllc.com
                Attorney for Plaintiffs